Cross and others, Trustees, v. UNION METALLIC FASTENING Co. and others.

*(Circuit Court, D. Massachusetts.  December 7, 1886.)*

1. PATENTS FOR INVENTIONS—INFRINGEMENT—EVIDENCE—EPPLER NAILING-MACHINE.
    On the evidence, *held*, that the pivoted foot-presser improvement on defendant's nailing-machine, alleged by plaintiffs to have been invented by one Nagle, and used for the first time by him on defendants' Eppler nailing-machine in September, 1883. had been used on said machine by defendants prior to that date, and therefore Nagle had not a patent-right therein.

2. SAME—INVENTION.
    An improvement in the nail-carrier of a nailing-machine, which consists in making the edge of the carrier smooth instead of corrugated, cannot be held to be an invention.

3. SAME—NAILING-MACHINES.
    Patent No. 308,370 of November 25, 1884. to James Nagle for improvements in nailing-machines considered and held void; part as being anticipated by the owners of the Eppler nailing-machine patent issued August 14, 1883, and part as not amounting to an invention.

In Equity.   Suit for the infringement of a patent.
*B. F. Butler* and *W. A. Macleod*, for complainants.
*Livermore & Fish*, for defendants.

COLT, J.   This suit is brought for the infringement of letters patent No. 308,370, dated November 25, 1884, granted to James Nagle for improvements in nailing-machines.   These improvements relate to certain changes made in the Eppler nailing-machine, for which a patent was issued August 14, 1883.   The main improvement consists in the substitution of a pivoted for a rigid presser-foot.   In the Eppler machine the presser-foot is rigid, in consequence of which it is said that the nail-throat sometimes catches on the head of the nail when moving backwards to the next nail-hole.   To remedy this supposed defect, the presser-foot is pivoted or made yielding in the Nagle machine.   The defenses are want of novelty, and a denial that Nagle was the first inventor.

Want of novelty is based largely on the fact that there is found in the prior Merritt machine a yielding presser-foot.   The plaintiffs contend that the mode of operation of the Nagle presser-foot is different from the Merritt, and that, therefore, the first claim of the patent should be sustained.   I have considerable doubt whether this position can be successfully maintained.   But, without deciding this, I am satisfied, upon the evidence, that Nagle was not the first inventor of the pivoted presser-foot described in his patent.   This question turns upon whether the pivoted presser-foot was first applied to the Eppler machine during the Institute Fair, in Boston, in September, 1883.   At this time Nagle was in the employ of the Union Fastening Company, the defendant company being its successor, and his duty at the

fair was to operate the Eppler machine. He says that, to remedy a defect in the working of the Eppler machine, exhibited at the fair, he conceived the idea of the pivoted presser-foot; that he made a wooden model, and exhibited it to John B. Flint, a fellow-workman, also to Henry S. Bacon, the superintendent of the company, and to Andrew Eppler, Jr., the foreman; that Eppler said it would not work, while Bacon thought it was worth trying, and ordered one made, which, when applied to the machine, gave satisfaction. This testimony is supported, in substance, by Bacon. It appears, however, that Bacon shortly afterwards, owing to some disagreement, left the company, and he does not deny that he is now interested in a rival company.

As opposed to this, we have the testimony of Eppler, the inventor of the nailing-machine; Eaton, a machinist in the employ of the defendant company; and Moses Coupal, Fish, Peter A. Coupal, and Flint, employed by the predecessor of the defendant company during the summer and fall of 1883, but who, at the time of giving their testimony, had no connection with the defendant company. These witnesses all testify to the effect that the pivoted presser-foot was applied to the Eppler machine previous to the fair. Eppler says he thought of the pivoted presser-foot in the summer of 1883, and gave directions to Flint and P. A. Coupal how to do the work, and Flint and Coupal confirm this statement. There are some discrepancies in the testimony of some of these witnesses, brought out upon long and rigorous cross-examination. But this is not strange, where questions of detail relating to past facts are critically gone into, and witnesses have to depend on their recollection. I am also aware of the attempt, on the part of the complainants, to impeach Flint's testimony. Bearing in mind all this, I think the defendants' evidence, taken as a whole, remains unshaken.

There is another class of evidence which the complainants seem to deem important. From the latter part of July to December, 1883, each workman employed by the company was required every day to report the character of the work done by him, and the time spent upon it, on a slip of paper, which was called a time-slip. The description of the work upon these slips is of such a character that it is difficult to tell whether or not they relate to changing the presser-foot. If the defendants are unable to show from the time-slips that the presser-foot was changed before the first part of September, 1883, so neither can the complainants prove from them that the change was made at the time of the fair. The entry upon the slip of Peter A. Coupal, of September 10th, may relate to the change made in the presser-foot, but this is not clear. The evidence of the time-slips, taken together, is of too indefinite a character to be given any considerable weight. Weighing carefully the evidence upon both sides, I think the defendants have shown that the pivoted presser-foot was applied to the Eppler machine prior to the fair, and that, therefore,

Nagle was not the inventor. This disposes of the first two claims of the Nagle patent.

The third claim relates to an improved nail-carrier. The nail-carrier of Nagle is identical with that used in the Eppler machine, except its edge is smooth instead of serrated. It is said the nail passes through the carrier with less obstruction when the edge is smooth. Admitting this, there is nothing which can properly be termed invention in making the edge of the carrier smooth instead of corrugated, and the claim must be held to be void.

The fourth claim is not in controversy.

The bill must be dismissed, with costs; and it is so ordered.